The next matter, number 24-2044, United States v. Jeremy Pittman. At this time, would counsel to the appellant please introduce himself on the record to begin. Good morning, Your Honors. May it please the court, I'm Brad Henry. I represent Mr. Pittman and I'd like to reserve three minutes for rebuttal. Okay, you may. Thank you. In a case about writing false letters of recommendation, the government failed to prove that those letters were objectively false beyond a reasonable doubt. The government's entire theory of criminal liability in this case was predicated on those allegations that Mr. Pittman wrote and verified false letters of recommendation. That's not a mere detail. It's the heart of the charges in this case. The court refuses questions, no vote. Additionally, count four charging money laundering improperly merges with bribery counts and its inclusion in trial unfairly prejudiced Mr. Pittman, creating a risk of spillover that permeated and undermined the fairness of this trial. These were not harmless errors, and as a result, Mr. Pittman is entitled to acquittal or at the very least a new trial. Beginning first with the question of actual falsity, this case turns on the fundamental legal principle. When the government charges various crimes for writing false letters of recommendation, it assumes the burden of proving that those letters are false. The government's obligation to prove that falsity arises from both the language of the indictment and from the structure of the statutes in this case. Turning to the indictment, the government alleged, and I'm quoting here, the purpose of the conspiracy was to one right and sign materially false letters of recommendation and to falsely and fraudulently verify those false letters of recommendation. The government bookended that article. What about the statement in the letter and many of the letters where he says, I have known this person to be diligent, polite and hard working. If he didn't know who the person was, it seems to me that would be a false statement. So I therefore focus in on, is there evidence that he knew who the person was so that he could say that? So I think there's been a conflation of issues here. If you read the contents of the letter, the specific contents of the letter here, the one you're talking about, I have known this person to be diligent. I think the real question is question number one, right? And there was throughout the trial, this question of did Mr. Pittman know these individuals? Mr. Pittman has never represented that he personally knew any of these individuals. The question was... It says, I have known him. I, first person singular, have known him. So it does seem he was saying in the letter that he did know them. I have known to be diligent. But the question becomes here. The question number two was, I have personally supervised these individuals. And what testimony came in? I'm not asking about that statement. I'm simply asking you if a jury could find that it was false when he said, I have known him to be diligent, polite and hard working. The answer is no. There was no proof that Mr. Pittman didn't know these individuals. Okay, so that was my original question. What evidence is there that he knew these fellows? Well, it's not Mr. Pittman's burden to prove that he knew them. But aren't there a series of emails going back and forth and he's asking the other individual, what should I put? What should I put in? That plus the letters, doesn't that add two and two is four? Um, no. So if you look at the testimony in trial, what Mr Pittman did, Mr Pittman had been on assignment in Afghanistan. Um, he served his six months and was ready to go home. They were going to then they needed to then keep him there on a special assignment where he worked individually and not a part of a unit. And as a result of that, he was assigned. He did not pick. He did not choose. He did not have one. He was given hundreds of individuals, presumably, as he went outside the wire to go build these, um, special forces bases. And so the question of did you know this individual, for instance, after today's hearing, I could say I knew the government's lawyer. I met him once. He interacted with me here. I left the courtroom. And if somebody asked me, did you know the government's lawyer? I could say yes. I knew. Could you say you had known him to be diligent? I could, based on my observations of him here in this courtroom and other, uh, he was in the district court with me. Don't we have to give context to what the purpose of the letters is? And again, I just can't ignore the exchange of emails as to why the letters are sought. So, yes. So, um, and again, we come to rule 29 also, it's in the light most favorable to the government that we consider the I mean, his counterpart is reviewing and editing the letters to fill in the information. So a jury could reasonably infer that he has no personal knowledge of these folks, and therefore that the information is false. It's the person who is adding the letters was the person who was under contract with the U. S. Government to provide those interpreters. I understand that. And so his reliance on that when he says in these letters that I quote supervised these individuals, a question of supervision is different than a question of knowing a person. A person can supervise a person who is assigned to them and through that supervision can then know them such that he understood that he that they were assigned to him, which you can verify through a third party that they interpreted for him and that during that interpretation, his observations of that person or all persons were that they were diligent and hard working, that they did the job, meaning they showed up and interpreted properly, that they were, in fact, in danger is a is a general matter in Afghanistan. I think it's understood that these interpreters who work for the U. S. Government are and are still in danger by the Taliban. Um, and that his his understanding of those questions and his representations in relation to answering those questions, um, could be true. I think it's a point out. So he said that to the jury and the jury didn't buy it. That's what they bought. A different inference of the evidence. That's right. This is a circumstantial evidence case. I mean, the government's identified five buckets of information that say that this circumstantial evidence shows that these letters are false. But we've got to keep in mind two things. One is what did that? What was the wording of those letters? And how does that come to play? Which we discussed the second is how does the law apply to that application of these facts, right? And this is a DeNovo review. Putting aside the rule 29. This court may look at the facts of this case and make its own determinations about what was proven and what was not proven. You when you came in, came in this morning, you passed a number of our court security officers at the check in and the like. Do you know them? I don't know that. All right. And if you sent a letter to me saying I have known them to be hard. I've known one of them to be hard working. That letter would be false. Would it not? That letter would be false. But that no, explain to me what the difference is between that example and your client writing a letter saying I have known so and so to be hard working after he's already explained that he didn't remember who the people were. So there's a difference between the scenario you just gave me, which is which is which is a passing by where there was no sort of business interaction. I'll call it where, as the interpreter, Mr Pittman showed up on site right of the military base in the middle of Afghanistan behind, you know, outside the wire in danger of life and limb. These interpreters showed up with him military uniform, Kevlar helmets, weapons in some instances where their job was to stand with him and interact with the Afghan locals where they were building these things. There was a there was a period of time where they engaged with each other. They spoke back and forth. There was a communication to and from. Whereas, you know, in your example downstairs, it was I put my stuff on and I'll walk by and they say, Have a nice day, right? It is fundamentally different in the way that those interactions occur. So you seem to be saying he did know all 100 of these people. That's right. The knowing and he still remembered them. Although I thought he said to let me let me quote a case from this circuit United States versus stay with me on this. I thought he said regard to these people. I thought he said to his associate there that it was several years ago. Didn't know all of them. And the associates applied the information. He doesn't remember them. I mean, keep this is years later. How does he truthfully say? I know them to be hard working if they were assigned to him and they interpret for him. He could say that they were hard. I mean, he knows that these even if he can't pick them out, like if they put him in a lineup, he couldn't pick him out. He could still no through third party verification. But how does he know that these particular individuals were in fact the interpreters that he worked with through that third party verification from the from the supplier from the contractor who supplied them to Mr Pitt, including that contractors for cousins that paid money. That's correct. That's correct. Okay. But if he's getting the list of people who may have worked, there could be individuals who work maybe five minutes. Somebody could have worked a full day. Somebody 23 days. But it's, you know, how does he know him? That's that's going back to the question again. However, it's the government's burden to prove that falsity, not Mr Pittman's burden to prove that he knew them right. There's a way to keep it in my burden. But again, it's your burden to tell us why what they what evidence they put forward was insufficient. Correct. So in United States versus row, which is a case from this circuit, 1 44 F 3 D 15. The court found that in a false statement prosecution, an answer to a question is not false. If there is an objectively reasonable interpretation of that question under which the answer is not false. And so, Mr Pittman statement were not false on their face here because there was a reasonable interpretation of the question asked of Mr Pittman. We're not whether he knew the individuals, but whether he supervised them in the fact that he verified with a third party. The party information does not require Mr Pittman to be able to personally verify that he had a personal relationship knowing them. Importantly, the Supreme Court and Thompson recently drew a distinction between false statements and misleading statements. False and misleading are two different things. A misleading statement can be true, and a true statement is not false. A statement that applies to any false statement does not cover all misleading statements. Only the false ones. The only relevant question for this court is whether the statement, even if misleading or deceitful or sloppy or lazy or verified for a third party, is whether it is also in fact false. That's from the Supreme Court. The government must. The government agrees with that in the criminal resource manual 500-999 in Chapter 9 12, where it talks about falsity in 1001 cases. It says it is required that the statements or representations actually be false, and the government has the of establishing the alleged falsity of the statement. It goes on to describe Webster's dictionary adjective as false is not corresponding to the truth or reality. But if a defendant's statement or the government's question or former requiring an answer is ambiguous, in this case, these questions are ambiguous. Let me ask you another question. Does the fact that he's getting paid for these letters, getting some money compensation go to the argument that the jury could consider that they were false? That's another factor also. If he's I'm sorry, can you repeat the question? He's receiving some money for preparing these letters. Sure. Doesn't that go to the overall evidence with the jury's mind? Plus his credibility. So it does go to the overall question of credibility. It also goes to the question as it relates to the facts of the quid pro quo of the bribery charge. But the fact that he received money is suggesting that it goes also goes to the evidence of falsification. It could. But again, it's circumstantial evidence and circumstantial evidence is not boundless, right? There has to be some limit on what the evidence shows as it relates to proving the falsity of the letters, which is required. In this case, what would the government then have to have proven or added in this case, uh, to, you know, to surpass the ruled 29 hurdle and for there to be a valid conviction that what other evidence? I think there could have been, um, they could have called, um, other individuals who had personal knowledge of this case. The witnesses in this case consisted of a gentleman from the State Department. Um, the agent who did the investigation. There was no one with firsthand knowledge of, um, for example, any of the military personnel who had been present with Mr Pittman to say, you know, he didn't use interpreters or he didn't know these interpreters. Any of the interpreters, um, themselves, the contractor, Mr Rabbani, they could have called him. They could have put on documentary evidence showing that these statements were, in fact, false, that he did not know them. The reasonable interpretation of these questions. You know, again, the government focuses on knowing them. It was the representation by Mr Pittman was he supervised them and knew them to be hardworking, right? That that is a separate statement from I personally know this person, right? And so I think that, uh, conflation of those two issues permeated this entire trial. There has to be something more than circumstantial evidence cases in this in this court have said as much. There has to be something more in circumstantial evidence, especially in false statement cases, which we have here. Okay, thank you. You have three minutes for both. Thank you. Thank you. Council Lieberman. Would Council of the government please introduce himself on the record to begin? Good morning, Your Honors. Dave Lieberman for the United States. Ample evidence supported all four counts of conviction. This court should affirm, uh, defense counsel started off with the false statement, false writing accounts. Unless the corporate for the otherwise, I'll go straight there. Members of this court have referenced repeatedly the Rule 29 standard. Could a reasonable jury viewing the evidence in the light most favorable to the government find that these letters contain false statements? The answer is yes, and it does go. It's with the first question from Judge chaotic. This question of personal knowledge. The letters both stated in the letters statement stated that he had been personally supervising the Afghan applicant for a set period of time, usually around a year, and then made statements tethered to that personal knowledge. Your Honor cited the key one. I have known him to be a diligent, polite, hardworking individual. There were others. I do not see the applicant is a threat. In my opinion, he would become a productive member of society. I don't think he poses a threat to U. S. Security. And so the question that the district court correctly answered this case, which is at 6 46 of the joint appendix. Could a reasonable jury infer that Pittman knew nothing about these applicants had no personal familiarity? The answer is yes. Now, the arguments that Mr Henry's made today is that is about well, my client personally verified them, and he knew them to be translators whom he worked for. The entirety of that defense came from Mr Pittman's own testimony. As Judge Thompson referenced, this is that joint appendix 446, and it is black letter law in this circuit that when a defendant takes the stand, the jury can believe him or the jury can discredit his testimony. Is there any evidence that any of these people did not work for him? No, I there is. So so you so the assertion that they work for him, you have not put in any evidence that would prove that to be false. So we have not put in any of their independent work histories or or anything about the contractors. So you're relying on Mr Pimmons. You can't rely on the statement then that they work for him. So you have no evidence that that is false. I think Mr Pittman's own statements constitute relevant evidence where he is, and I can give your honor. I think where does he say that any of these individuals did not work for him? So I apologize. He didn't say that, but he he repeatedly says things like I don't know these individuals to 37 of the joint appendix separate issue whether he knows them or not. But you suggested that one of the falsehoods was that they worked for him, and I saw no evidence that established any of these people did not work for him. The only evidence I saw related to that was his testimony that he confirmed with who is it? Rubini or whoever it was that they did work for him. I misspoke. The falsity here is the personal knowledge component I have personally supervised and then makes Mr Pittman in the letters makes a number of statements premised on that personal take that. And if there's no evidence that they didn't work for him, then where is there evidence that he didn't supervise them? So I would I think it comes from his own state. He doesn't remember them. If he can't help you, he doesn't remember them on this statement. The statement you're now pointing to, as I understand it, is that he supervised them personally. Where is the evidence in the record that he did not supervise them personally? Uh, you're right. I don't have any direct evidence. I think you don't have any circumstantial evidence that he didn't supervise them. So I think the best circumstantial evidence I have starts at joint appendix page 2 30, where in this initial discussion, Pittman asks, who are these letters for? Rabbani, my cousins. I have five of them. They will pay. They then discuss the deal, $500 per letter. Rabbani references a total of 10 letters in this process. He's only given Mr Pittman one name, 10 letters, one name. Pittman agrees to the deal. Okay, send me the info. So Mr Pittman is agreeing to write 10 individuals. He doesn't even have a name yet. And this happens again at joint appendix 269 through 270. Sure. But if it turns out all those 10 individuals, unbeknownst to him, worked for him and was supervised by him, then it's not false for him to say they worked for me and was supervised by me. So you have to have some evidence that they didn't work for him and he didn't supervise them. And I haven't heard you point to any evidence yet. You're pointing to evidence that he didn't take sufficient precautions to confirm that. But I think in a criminal prosecution, it's your duty to show that it was false. So let me accept the premise. So I keep coming back to the only thing you seem to really have is his assertion that he know them to be hard working. And if that's all I have, this is still sufficient because there are still multiple statements in that letter that are based on his own personal familiarity. For example, the last one you mentioned, I know I'm not to pose a threat to U.S. security. Yes, Your Honor. And what I'm thinking is about that is maybe let's assume he saw them all or interacted. But to make a statement like that, don't you have to really look their files or look at everything else? You just can't make a blanket statement of zero threat to national security. Yes, that is the most reasonable way to read the letter. There are multiple statements. So even accepting that some or even all of these applicants actually worked with Pittman in some capacity, could the jury reasonably infer that he, at the time he wrote these letters, doesn't have any memory of them, has no personal knowledge of what they did, what roles they performed, whether or not they were a threat to U.S. security, whether or not they were under threats of safety? The answer is yes. And for that reason, the letters are false. No personal... So as long as one of those multiple statements is false, that's it. That's all you need. Correct, Your Honor. So now that we've got it down to his assertion of knowledge is what your case seems to hinge on. Yes, Your Honor. As I understand it, his counterargument as I piece it together is that, well, if these people worked for me, then that fact alone tells me they weren't a threat to national security. As far as I knew, and they were hardworking, because all my people were hardworking. So I think that was part of his defense, and he testified to that at trial, and the jury could fairly reject that inference and accept the inference that he didn't have any facts within his personal memory at the time he wrote the letters. And therefore, a number of those statements in the letters, the one that you referenced earlier, the one that Judge Helpe just referenced, are false, because they are tethered to this question of personal knowledge. And what was the precise testimony that the verdicts were lying on with regard to him not remembering the people? So it's... We've cited... We've tried to lay it out in our brief. I'll cite three buckets of evidence. Here is that initial bucket, which is, he's agreeing to write letters for people before he even has the names of the individuals. The other, that's 269 and 270, Rabbani, I will forward three more employee details. Pittman's response, send me the details. I will adjust the letters. Let me... One thing you also mentioned, the fact that he's agreeing in bulk to sign X number of letters before having... That also, I would assume, and you're real buttress is the government's argument. There's sufficient evidence, right? Absolutely. This is not just one single letter, and it says, get me the information. And let me just say from experience, I've had, over the last 25 years, I don't know, 100 law terms. Judge Thompson has probably had as many, Judge Kayano. But sometimes, we might not remember, and let me get the information. And if you do the due diligence, you might get it. But here, he's agreeing to do everything without even doing the due diligence. Right. We have the photo negative in this case. He's agreeing to write letters before he even added names. And let's fast forward a little bit. After, according to his testimony, he does the due diligence. According to Pittman, I've confirmed that these individuals worked for me. The State Department comes back to verify the authenticity of the letters. Joint Appendix 284. He gets these verification requests after he supposedly did try to refresh his recollection. Email to Rabbani from Pittman, which name should I approve? I don't recognize them all. So this is all the more evidence, combined with some of the contextual evidence. Judge Helpe, you referenced the fact that he's getting paid per the letter. Judge Thompson, you referenced the fact that Rabbani is actually supplying the language in the letter. Line all of this up. Flip all the inferences into the government's column on Rule 29. Could a jury reasonably infer a lack of personal knowledge? Yes. And then the falsity of particular statements in the letters flows from there. If I would just want to quickly pivot. Sorry, Your Honor. Before you pivot, did the military keep records of the names of the interpreters? It's not in the record and I don't know. You don't know. I just want to pivot to the bribery counts and then I'll briefly reference the money laundering counts. The primary claim here has been the letters were not false. That dispute does not come into the bribery count or the 371 conspiracy count. The elements of bribery, this court has laid them out. They're very simple. McDonough, page 152. Did the public official enter an agreement to receive something of value in exchange for an official act? We have that here. February 2018, the emails. Pittman agreed to provide letters for Afghan applicants to the State Department. That's the official act in exchange for a thing of value, $500. We're here on sufficiency review. Falsity is not an element of 201 bribery, so it's not relevant to that count. Same as a 371 conspiracy. It's a criminal agreement to do something. If it's a dual object conspiracy, one of the objects that we charge is bribery. We don't, for conspiracy, we just have to prove the agreement. We don't have to prove that Pittman sent any false letters, much less that the letters that he sent were false. It's the question of, at the time he entered the agreement, could a jury reasonably infer that he intended to write letters for applicants, these letters for applicants whom he did not know? And the answer is yes. Falsity is not an offense element. It's not part of the Rule 29 sufficiency claims for this court. I've addressed in a Rule 29 letter Pittman's contentions about waiver. And the only thing I would add to his reply brief, he seems to, Pittman seems to want to house this falsity requirement in the corruptly element of bribery, which the term corruptly is in the statute. I'm not aware of any court that has housed a falsity requirement in 201 corruptly. The district court defined corruptly as this court has defined it. It's acting with a purpose of accomplishing an unlawful result, Joint Appendix 541. What was the unlawful result alleged here? As the district court explained, the allegation was that Pittman received something of value in exchange for an official act. On the money laundering account, if you might address that briefly, specifically, what was the financial transaction and what were the proceeds? Your Honor, so we have this top line point that we don't need a financial transaction for either of these accounts. But on the facts here, there were the first transaction exchange of money occurs when the Afghan applicants sent that $500 to Rabbani, a co-conspirator. This happens at sometime before July 2017, 2018. Rabbani is holding the money. And then he and Mr. Pittman engaged in a conversation about how to get the money over to the United States. That is the second transaction. This two-step is remarkably similar to the factual pattern that this court confronted in the Foley decision, which he cited in our brief. That was a mortgage fraud case. Conspirator 1 fraudulently gets mortgage loan proceeds. That's the first transaction. And then the second transaction is conspirator 1 sends the proceeds, the tainted proceeds of the fraud to conspirator 2. This court said, no merger problem. Same principle applies here on the facts because of this two-step of the money to the conspirator 1, Rabbani, then to conspirator 2, Pittman. We also have our legal arguments that merger just doesn't come into play with respect to when the predicate offense or the money laundering charge doesn't require proof of a financial transaction. Bribery doesn't require proof of a financial transaction. And here we charge money laundering concealment conspiracy. And we have cited cases that conspiracy inchoate charges, merger concerns don't arise. We also cited four circuits that have held that merger concerns don't arise in concealment money laundering cases, which this is such a case. But we're also here, the merger claim is here on plain error. There was no merger claim raised below the word merger was not mentioned at all to the district court. And so there's a thinking of prong to a plain error review, thinking back to the last oral argument and a question from Judge Helpe, there's not a lot of case law in this circuit about the merger doctrine, which all transfers back to Santos. And this court said in fully, given the ambiguity of Santos' holding, the lack of circuit guidance as to how, where that expands to, makes it pretty darn hard for a defendant to prevail on the second prong of plain error review, that this merger, any merger problem here was so clear and so obvious that the district court should have jumped in and dragged it. So that's another way that this court can review and affirm on the jury's verdict on the merger, excuse me, on the money laundering count. I have about 20 seconds left, unless the court has any additional questions or concerns, the governor asks that the court affirm. Thank you, your honors. Rebuttal, three minutes. Thank you, your honor. I'll address, I'd like to address. Please identify yourself, reidentify yourself. I apologize, Brad Henry for Mr. Pittman. I'd like to address all three issues that the government hit on, but the first thing I'll say is, again, I would ask this court to really pay attention to the wording of the letters that Mr. Pittman wrote. Judge Helpy, to your question about his representation, about a threat to the United States, if you look at the wording of it, I do not see as a threat to the United States, and in my opinion, how do you prove that a person's opinion is false, right? If his interactions, and if it is in fact true that it turns out, as Judge Kayada pointed out, that these people did work for him, how do you say that his opinion about that is false, right? So please pay attention to the wording of the letters, and I'll leave that there. As it relates to the bribery counts in the 371, I'll say this. The government is correct that bribery requires quid pro quo, but it also requires corrupt intent, and at his point, it requires an unlawful purpose, right? And there have been courts who have determined that a quid pro quo in and of itself is what is required, but that writes out of the statute the word correctly in its entirety. There is an interpretation issue with that, and so I would implore this court to look at that underlying issue, but more importantly, and the overlying issue here is, is you just pull out the indictment and you look at it, the official act that the government identified, that the government identified, was that he wrote false letters, not that he wrote any letter, right? The charge was not that he took money to write a truthful letter, or I took money to write a letter that I'm indifferent about. It was that I took money to write a false letter. That was the charge, and that's what Mr. Pittman defended. And so they take on that burden to prove this falsely, which again, they've just conceded on the record that there is no proof that these letters were in fact false, or these individuals didn't work for Mr. Pittman, or that he didn't know them. The final thing I'll say is... I'm sorry. You said the government conceded somewhere that the letters were not false? Well, that there's no direct proof that the letters were false. Okay, but you don't have to have direct proof. You can have circumstantial proof. It's equally, equal weight for the jury to weigh. Right. I think the circumstantial evidence doesn't prove falsely. Circumstantial evidence may prove his intent. It may prove, you know, it may prove that he has a faulty memory. It may prove that, you know, he was sloppy, but it doesn't prove that he wrote a false letter. The final thing I'll say on the money laundering counts is that here, the government's cases that they cite are all distinguishable. This is a clear merger issue. The cases that they cite involve multiple transactions, involve crimes that do not have the necessity of an underlying financial transaction. Here, of course, there is. And so my time is up. Thank you. Okay. Thank you. Thank you, counsel. That concludes argument in this case.